01-1551 PAM/JGL
01-2339 PAM/RLE

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-2569

Kelly Renee Neumann, *
*
Appellant, *
*
v. *
*
AT&T Communications, Inc., *
*
Appellee. *

No. 03-2570

Appeals from the United States District Court for the District of Minnesota.

Kelly Renee Neumann, *
*
Appellant, *
*
v. *
*
AT&T Communications, Inc., *
a Delaware Corporation; Gates *
McDonald Co., an Ohio Corporation, *
*
Appellees. *

Submitted: February 9, 2004
Filed: July 6, 2004

SCANNED
SEP 30 2004
U.S. DISTRICT COURT MPLS

Before MELLOY, FAGG, and COLLOTON, Circuit Judges.

---

COLLOTON, Circuit Judge.

Kelly Neumann brought an action in state court alleging that AT&T retaliated against her for filing a workers' compensation claim and failed to accommodate her disability under Minn. Stat. § 176.82, subd. 1 and 2. Her case was removed to the district court[1] on the ground that her claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, insofar as her claims required the court to construe her employer's ERISA-governed disability plan. After removal of her original action, Neumann filed a related lawsuit in the district court alleging state and federal causes of action against AT&T and Gates McDonald Company.

Neumann's two actions were consolidated by the district court. The district court denied Neumann's motion to remand the case to state court, and then dismissed Neumann's claim that AT&T violated the Minnesota Human Rights Act ("MHRA") by failing to accommodate her disability. The court later granted summary judgment in favor of the defendants on all of Neumann's federal claims, and then remanded to state court her one remaining claim premised on Minn. Stat. § 176.82, subd. 2. On appeal, Neumann argues that the district court erred by declining to remand her state court action, by dismissing her claim under the MHRA, and by granting summary judgment in favor of defendants on her federal claims. We affirm.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

I.

A.

Neumann worked for AT&T as a Customer Sales and Service Specialist. She had serious back problems dating back to at least 1994. On October 6, 1998, Neumann returned to work after having been out for several days for back treatment. That very day, Neumann slipped and fell in the office while reaching for reference books. As a result, she experienced pain in her lower back and was taken to a hospital emergency room.

Neumann did not work during the ensuing months. She was evaluated and treated by a Dr. Buttermann, as well as other physicians. These physicians arrived at conclusions about Neumann's physical limitations, as well as the extent to which her lower back condition was a result of the accident on October 6, 1998, as opposed to earlier injuries.

Neumann was a participant in AT&T's Sickness and Accident Disability Benefit Plan ("SADBP"), an ERISA-governed plan which provides participants with disability benefits. AT&T funds the SADBP and acts as plan administrator. AT&T contracted with appellee Gates McDonald Company to administer certain aspects of the SADBP's claims procedure. The SADBP contemplates two mutually exclusive categories of benefits: "sickness" benefits, which are governed by Section 3 of the plan, and "accident" benefits which are covered by Section 4. For purposes of the SADBP, "sickness" includes "injury other than accidental injury arising out of and in the course of employment by the Company . . . ." The SADBP further specifies in Section 4.6 that "accidental injuries" are those that result "solely" from an accident "during and in direct connection with the performance" of Neumann's job duties.

Pursuant to SADBP Section 5.26, plan payments are coordinated with workers' compensation benefits. An employee who is eligible for both workers' compensation and SADBP benefits may receive payments from the plan only up to the amount, if any, by which the plan benefit exceeds the amount mandated by the workers' compensation law.

AT&T ultimately classified Neumann's injury as a "sickness" under the SADBP. The amount of "sickness" benefits payable varies depending on an employee's tenure. Based on Neumann's net credited service at the time of the accident, she was entitled to a maximum of 13 weeks of full pay, followed by 39 weeks at one-half her salary, for a total of no more than 52 weeks pursuant to SADBP Section 3.2(c). After 13 weeks, however, Neumann received two-thirds of her salary because that amount of payment was required by workers' compensation law, even though it exceeded SADBP's half-pay sickness disability benefit. Thus, Neumann received SADBP "sickness" benefits and workers' compensation benefits for a period of 52 weeks. Had Neumann's condition been characterized as an "accident" under the SADBP, her eligibility for benefits would not have been limited to a total of 52 weeks, and she asserts that her employment would have been assured during the period of her disability.

While she was not working, Neumann received a number of written notices pertaining to her benefits. On December 14, 1998, Gates McDonald informed Neumann that her claim for benefits "under the Accident (SADBP) Plan" was denied. By separate letter of the same date, Gates McDonald advised that Neumann was eligible for benefits under "the Workers' Compensation Plan." On March 2, 1999, AT&T sent Neumann a notice indicating that if Neumann continued to be absent beyond expiration of her "Sickness Disability Benefits" under the SADBP, she could consider applying for Social Security disability insurance benefits. The letter further stated that if Neumann "continue[d] to receive Sickness Disability Benefits under the SADBP for approximately nine months," then she would receive information

regarding long term disability benefits. On July 1, 1999, AT&T sent Neumann a notice advising that "[i]f you expire your 52-week Sickness Disability Benefit entitlement, your employment will be terminated and all benefits may terminate at the end of [October, 1999]." This letter also explained how to apply for long term disability benefits.

Neumann claims to have asked a management-level employee at AT&T, Mark Peterson, and a representative of CIGNA, the administrator of AT&T's long term disability plan, about the July 1, 1999 letter. Neumann asserts that these persons told her that the letter did not apply to Neumann because she was receiving workers' compensation benefits.

Neumann contends that she planned to return to work, albeit with certain restrictions, on September 20, 1999. According to Neumann, AT&T instructed her not to report for work and cancelled ergonomic modifications to her work station. In a letter dated September 30, 1999, AT&T told Neumann, "[y]our 52 weeks of Sickness Disability Benefits will end on October 12, 1999. The Health Affairs organization has advised us that you will not be returning to work. Therefore, you will be taken off the active payroll effective October 12, 1999." Ultimately, Neumann was terminated by AT&T.

B.

On January 13, 2000, Neumann sued AT&T in Minnesota state court. Neumann claimed that she was discharged in retaliation for seeking workers' compensation benefits, in violation of Minn. Stat. § 176.82, subd. 1, and that AT&T had refused to offer continued employment to her when employment was available within her physical limitations, in violation of Minn. Stat. § 176.82, subd. 2. After the state court litigation reached the stage of a motion for summary judgment, AT&T

removed the action to the district court on the ground that Neumann's claims were preempted by ERISA.

On August 14, 2001, Neumann appealed the classification of her injury as a "sickness" under the SADBP to the AT&T Benefit Claim and Appeal Committee ("BCAC"). Under the SADBP, the BCAC is granted complete discretionary authority to interpret plan terms and make eligibility determinations. The BCAC is the final review committee with respect to all appeals by SADBP participants. The BCAC reviewed Neumann's medical records and other reports. On October 25, 2001, the BCAC issued a written decision concluding that Neumann's back condition did not arise "solely" from her October 6, 1998 accident at the workplace, and that -- with the exception of the day of the incident -- she was entitled to sickness, not accident, benefits.

During this period, Neumann moved the district court to remand her lawsuit to state court. In an order dated November 8, 2001, the district court denied her motion to remand and ruled that Neumann's claims were completely preempted by ERISA. *Neumann v. AT&T Communications, Inc.*, No. 01-1551, 2001 WL 1640066, at *3-4 (D. Minn. Nov. 8, 2001). The district court examined Neumann's claim, as well as her state court summary judgment brief, and concluded that Neumann's "claims under Minn. Stat. § 176.82 rest[ed] on allegations that AT&T violated its ERISA plan," and that the court had to "interpret the SADBP in order to determine the merit of her claims." *Neumann*, 2001 WL 1640066, at *3. Therefore, the court concluded, Neumann was seeking to recover benefits allegedly due to her under the terms of her plan, and that her claim arose under federal law.

Neumann responded in December 2001 by filing another lawsuit in federal district court against AT&T and Gates McDonald. Neumann's amended complaint alleged "Estoppel and Ratification" and "ERISA Violations" against AT&T and Gates McDonald in Counts I and II, respectively. Count III alleged a violation of the

Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, subd. 35(1), against AT&T. Count IV alleged retaliatory discharge in violation of Minn. Stat. § 176.82, subd. 1, against Gates McDonald. The district court consolidated this second action with Neumann's original action that had been removed from state court.

On August 12, 2002, the district court granted AT&T's motion to dismiss Neumann's MHRA claim on the ground that it was preempted by the Minnesota Workers' Compensation Act. *Neumann v. AT&T Communications, Inc.*, Nos. 01-2339/01-1551, 2002 WL 1949747, at *3 (D. Minn. Aug. 12, 2002). Additionally, the district court reaffirmed its November 8, 2001 decision that Neumann's retaliatory discharge claim under § 176.82(1) was completely preempted by ERISA, but amended its previous order to reflect that Neumann's claim alleging refusal to offer continued employment under § 176.82(2) was not completely preempted by ERISA. The district court nevertheless exercised pendant jurisdiction over that state-law claim.

On May 8, 2003, the district court granted summary judgment in favor of AT&T and Gates McDonald on Neumann's ERISA and estoppel claims. *Neumann v. AT&T Communications, Inc.*, Nos. 01-2339/01-1551, 2003 WL 21147722 at *5-7 (D. Minn. May 8, 2003). Since no federal causes of action remained, the district court remanded Neumann's remaining state-law claim to state court pursuant to 28 U.S.C. § 1441(c). *Id.* at *8.

II.

A.

Neumann challenges the district court's conclusion that her state court action was removable to federal court under the doctrine of "complete preemption." That doctrine provides that Congress may "so completely pre-empt a particular area that

any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Claims arising under the civil enforcement provision of Section 502(a) of ERISA, 29 U.S.C. § 1132(a), including a claim to recover benefits or enforce rights under the terms of an ERISA plan, implicate one such area of complete preemption. Congress intended that an action brought to recover benefits or enforce rights that were allegedly denied contrary to the terms of an ERISA benefit plan will be regarded as arising under the laws of the United States, even if the complaint filed by the plan beneficiary purports to raise only a state-law cause of action. *Metropolitan Life*, 481 U.S. at 66-67. Thus, where a claim "relate[s] to any employee benefit plan," 29 U.S.C. § 1144(a), such that the claim is preempted by federal law, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987), and the claim seeks to recover benefits due or enforce rights under the terms of a plan, 29 U.S.C. § 1132(a), such that the exclusive cause of action is under federal law, then the action is subject to removal. *Metropolitan Life*, 481 U.S. at 66-67.

As noted, Neumann's claims in her state court complaint were that AT&T unlawfully discharged her in retaliation for receiving workers' compensation benefits, and that AT&T unlawfully refused to offer continued employment to Neumann despite the availability of employment within her physical limitations. Neumann's brief opposing AT&T's state court motion for summary judgment, however, made clear that her claims related to the AT&T benefit plan governed by ERISA. Neumann argued that "AT&T's own policy manuals and Sickness and Accident Disability Plans conclusively demonstrate that AT&T violated its own Plans and Policies when it terminated Plaintiff, after she received 52 weeks of workers' compensation benefits." She asserted that "AT&T's application of it's [sic] own written policies and procedures" demonstrated the merit of her claims. She argued that "a review of the three disability plans (sickness, accident, and workers' compensation) offered by AT&T" was "necessary" to understand "the fallacy of AT&T's argument" on the motion for summary judgment. And, as the district court observed, she spent several

pages "citing various portions of the SADBP and arguing in favor of a certain interpretation of the plan."

We conclude that Neumann's retaliatory discharge claim is completely preempted by ERISA. The ERISA preemption clause is "conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), and state law "relate[s] to" a benefit plan if it "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Neumann implicitly concedes that a state-law claim "relates to" an ERISA plan where resolution of the claim is substantially dependent on an analysis of the terms of the benefit plan. *See Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995); *cf. Carter v. Ford Motor Co.*, 121 F.3d 1146, 1149 (8th Cir. 1997) (Section 301 of Labor Management Relations Act preempts state tort claims where resolution of the claim is "substantially dependent upon an analysis of the terms or provisions of a collective bargaining agreement.").

Like the district court, we believe the "heart of the lawsuit" filed in state court is Neumann's claim that AT&T violated its ERISA plan by classifying Neumann's condition as a "sickness" rather than an "accident." Neumann's arguments require interpretation of the plan, and those arguments do not affect the plan in merely a "tenuous, remote or peripheral" manner. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 90, 100 n.21 (1983). Rather, the success or failure of Neumann's claims would impact the relationship between the SADBP and its participants, the structure of the SADBP, and SADBP administration and finances. *See Bannister v. Sorenson*, 103 F.3d 632, 635 (8th Cir. 1996) (listing non-determinative factors bearing on whether state-law claims "relate to" ERISA).

Neumann's claim also involves an attempt to recover benefits that she alleges are due to her under the benefit plan, so her exclusive cause of action is under Section 502(a) of ERISA. This case is unlike those in which a plan participant merely seeks to recover lost plan benefits as damages for a wrongful discharge from employment

that is unrelated to the benefit plan. *E.g.*, *Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1312-13 (9th Cir. 1997). Here, as described above, the merits of Neumann's retaliatory discharge claim are substantially dependent on her assertion that AT&T incorrectly classified her injury under the SADBP. Accordingly, we hold that the doctrine of complete preemption applies to Neumann's state court complaint, and that removal to federal court was proper.[2]

B.

Neumann next argues that even if the removal was proper, the district court erred in granted summary judgment in favor of the defendants on Neumann's federal claims. We disagree.

Neumann argues that AT&T and Gates McDonald improperly denied her claim for "accident benefits" under the SADBP. Because the plan gives the administrator discretionary authority to determine eligibility for benefits,[3] we ordinarily would review the administrator's determination for an abuse of discretion. *Firestone Tire*

---

[2]Neumann also argues that removal was prohibited by 28 U.S.C. § 1445(c), which provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." In *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1246 n.11 (8th Cir. 1995), however, we concluded, "as a matter of Congressional intent, that § 1445(c) would not apply to a claim which is completely preempted by federal law and only facially arises under a state's workers' compensation laws." Given our conclusion that Neumann's claim is completely preempted by ERISA, § 1445(c) is inapplicable.

[3]SADBP Section 7.4 gives the BCAC "sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any participant . . . and construction of disputed or doubtful terms."

*& Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under that standard, we uphold an administrator's interpretation of the plan if it is "reasonable," even if the reviewing court disagrees with the interpretation. *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004). Neumann argues that we should apply a less deferential standard of review, because AT&T and Gates McDonald committed "serious procedural irregularities" that had "some connection to the substantive decision reached" on Neumann's claim. *See Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir. 1998).

We are not persuaded that the ordinary standard of review should be altered. For heightened review to apply, a beneficiary claiming procedural irregularities must show that the plan administrator, in the exercise of its power, acted dishonestly, acted from an improper motive, or failed to use judgment in reaching its decision. *Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996) (citing Restatement (Second) of Trusts § 187 (1959)). The beneficiary must demonstrate not only procedural irregularities, but also that any such irregularities "caused a serious breach of the trustee's fiduciary duty to the plan beneficiary." *Id.* The irregularities "must have some connection to the substantive decision reached," such that they leave a reviewing court with "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim," or demonstrate that "the actual decision was reached without reflection and judgment." *Id.* at 900-01. Otherwise, a deferential standard of review is appropriate. *Id.*

In support of her claim that the benefit determination suffered from procedural irregularities, Neumann asserts that Gates McDonald failed to consider certain medical evidence when it initially denied accident benefits, that AT&T and Gates did not provide adequate notice that Neumann was receiving sickness benefits, and that Gates did not provide a written explanation of its denial of accident benefits and of Neumann's right to appeal. When it considered Neumann's appeal from the initial

denial by Gates, however, the BCAC considered Neumann's medical records and rehabilitation reports that were contained in the 328-page administrative record.[4] The BCAC also waived the normal timeliness requirements for the appeal, thus avoiding any prejudice to Neumann arising from the absence of written notice concerning the initial denial of accident benefits. The alleged irregularities cited by Neumann, therefore, do not raise in our minds serious doubts as to whether the denial of benefits was the result of an arbitrary decision or whim, or that the decision was reached without reflection and judgment. *Buttram*, 76 F.3d at 901. The administrator's determination should be reviewed under an abuse of discretion standard.[5]

In its decision, the BCAC interpreted the SADBP to mean that where an employee's injury was attributable in part to a pre-existing condition, the employee was ineligible for "accident" benefits. The administrator relied on SADBP Section 4.6, which states: "Accidental injuries shall be considered as arising out of and in the course of employment only where the injury has resulted *solely* from accident during and in direct connection with the performance of duties to which the employee is

---

[4]Neumann claims that the BCAC failed to consider a post-accident MRI report, as well as a report from Dr. Buttermann dated March 29, 2000 and addressed to Neumann's counsel. It is not clear whether Neumann made these materials available to the BCAC, but it is clear that Neumann suffered no prejudice as a result of their omission from the administrative record. The post-accident MRI is discussed in reports of Dr. Buttermann that were reviewed by the BCAC, and Dr. Buttermann's March 29, 2000 report – the one that the BCAC allegedly failed to consider – apportioned 75% of her current condition to her preexisting injuries, thus *supporting* the BCAC's conclusion.

[5]Neumann argued in the district court, but not on appeal, that the determination of the BCAC was entitled to less deference because AT&T was self-insured for benefits. We have held, however, that no presumption of conflict of interest arises "simply because the plan administrator is also the self-insured provider of the benefits." *Davolt v. Executive Comm. of O'Reilly Auto.*, 206 F.3d 806, 809 (8th Cir. 2000).

assigned in the service of the Company[.]" (emphasis added). The BCAC concluded that the term "solely" requires an employee seeking accident benefits to show that an injury arising out of employment resulted only from an incident in the workplace, and was not attributable in part to a pre-existing medical condition. After reviewing the extensive medical record, the BCAC concluded that Neumann's symptoms were related in part to a history of low back pain that predated the incident in the workplace. Accordingly, the administrator "concluded that Ms. Neumann's condition is not solely related to the incident that occurred on October 6, 1998," and upheld the denial of accident benefits.

We conclude that the administrator's determination was reasonable. *See Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621-22 (8th Cir. 1992). The BCAC's interpretation is consistent with clear language of the SADBP. "Solely" means "to the exclusion of alternate or competing things," *Webster's Third New International Dictionary* 2168 (1993), and the most natural reading of that term in Section 4.6 of the SADBP excludes injuries that are related to pre-existing conditions. We reject Neumann's contention that the BCAC has interpreted the plan, and the disputed term, inconsistently. It appears that the BCAC previously had applied the term "solely" in connection with an injury that occurred outside the workplace in order to determine whether an employee's injury resulted "solely" from the performance of his duties. But the application of the term in one context does not foreclose the BCAC from interpreting and applying the provision in the quite different context of pre-existing conditions, nor does it render the BCAC's interpretation "inconsistent."[6]

---

[6]Neumann argues that the BCAC's decision is inconsistent with a provision that requires employees to elect plan coverage as an alternative to claims they may have by law (Section 5.23), and with a provision that she says prohibits the offset of plan benefits and worker's compensation benefits (Section 5.26). These arguments fail because the election provision relates to accident, not sickness, benefits, and because the plan provision that allows for the coordination of workers' compensation and

The ultimate decision applying the plan terms to Neumann's case was supported by substantial evidence. The undisputed medical evidence showed that Neumann's condition did not result "solely" from the workplace incident. After performing an independent medical evaluation of Neumann, Dr. Robert Barnett, Jr., opined that "the current level of symptoms and Ms. Neumann's dysfunction are related to conditions that predate her October 6, 1998 injury." Moreover, one of Neumann's own treating physicians, Dr. Buttermann, in a report that Neumann argues the BCAC *should have* considered, opined that she had a preexisting back condition, and that her current condition was 75% attributable to her preexisting condition and "25% to the work injury of October 6, 1998." Under these circumstances, we hold that the district court correctly ruled that there was no genuine issue for trial concerning the denial of Neumann's claim for accident benefits.[7]

---

sickness benefits does call for an offset, in the sense that the amount of sickness benefits an employee may receive from the employer is reduced by the amount of payments under law received from workers' compensation.

[7]Neumann asserts that the district court "mis-characterized Neumann's ERISA claims," and thus "failed to identify key outstanding issues of material fact that preclude summary judgment here." In particular, Neumann contends that her ERISA claims are "more properly characterized as claims for *wrongful termination*," and argues that the district court should have asked whether "the SADBP provides for termination under the facts of this case." We have reviewed Neumann's entire memorandum in opposition to the motions for summary judgment filed in the district court, and we find that the district court's "characterization" of Neumann's ERISA claims tracks precisely the argument that she presented in opposition to the motions for summary judgment. Neumann's memorandum for the district court did not argue that she was "wrongfully terminated" in violation of ERISA, and we hold that any such claim was waived. Moreover, as discussed in connection with the complete preemption of Neumann's state-law claim, her allegation of retaliatory discharge was dependent on her assertion that AT&T and Gates McDonald improperly classified her as eligible for sickness benefits, rather than accident benefits, a claim that we reject.

C.

Neumann claims that AT&T and Gates McDonald should be equitably estopped from classifying her injury under the "sickness" portion of the SADBP, and from terminating her after she received 52 weeks of sickness benefits. Neumann acknowledges that she received a letter dated July 1, 1999, which stated: "If you expire your 52-week Sickness Disability Benefit entitlement, your employment will be terminated and all benefits may terminate at the end of the month." She asserts, however, that she later conferred with an AT&T manager, Mark Peterson, and a representative of CIGNA, the company's long-term benefits administrator, both of whom informed her that because she was receiving workers' compensation benefits, the AT&T letters advising her of potential termination did not apply to her. Neumann argues that "these statements interpreted the ambiguity between the definitions of sickness and accident under the plan," and that she reasonably relied on them to her detriment.

The district court opined that Neumann's allegation of estoppel in her complaint "is not a model of clarity," and we have a similar view of her argument on appeal. We agree with the district court, however, that the statements allegedly made by Peterson and CIGNA did not relate to the definition of accident or sickness benefits under the SADBP, and Neumann has therefore not created a genuine issue of fact as to whether AT&T and Gates McDonald are estopped from classifying her injury as one covered by sickness rather than accident benefits. To the extent Neumann argues that the alleged statements precluded AT&T from terminating sickness benefits after 52 weeks (and thereafter terminating Neumann), we agree with the district court that Neumann may not use an estoppel theory to modify the unambiguous terms of an ERISA plan. *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996). The SADBP unambiguously provides that sickness benefits expire after 52 weeks, and nothing in the plan creates an ambiguity concerning whether the benefit period depends on the receipt of workers' compensation benefits.

The only reference in the plan to workers' compensation benefits and other "payments under law" concerns the relationship between the *amounts* that will be paid from workers' compensation and sickness benefits, respectively, when an injured employee is eligible for both.

D.

The Minnesota Human Rights Act requires employers to make reasonable accommodations for disabled, but otherwise qualified, employees. Minn. Stat. §§ 363.01, subd. 35(1), 363.03, subd. 1(6) (2002). In Count III of her amended federal complaint, Neumann alleged that AT&T refused to make a reasonable accommodation for her back injury. The district court dismissed this claim on the ground that since Neumann had received workers' compensation benefits, the disability discrimination claim was barred by the exclusive remedy provision of the Minnesota Workers' Compensation Act. That provision states that "[t]he liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee . . . entitled to recover damages on account of such injury or death." Minn. Stat. § 176.031.

The Minnesota Supreme Court has held that the exclusive remedy provision precludes a disability discrimination claim based on work injuries for which an employee already has received workers' compensation benefits. *Karst v. F.C. Hayer Co., Inc.*, 447 N.W.2d 180, 186 (Minn. 1989). Subsequent courts confronting the issue have reached the same conclusion. *See Ciszewski v. Engineered Polymers Corp.*, 179 F. Supp. 2d 1072, 1084 n.10 (D. Minn. 2001) (MHRA disability discrimination claim "flatly preempted" because it was based on work injuries for which plaintiff "already filed and received workers' compensation benefits"); *Braziel v. Loram Maintenance of Way, Inc.*, 943 F. Supp. 1083, 1102 n.20 (D. Minn. 1996) (even if plaintiff had raised a genuine issue of material fact concerning his status as a qualified individual with a disability, state-law disability claim would fail under

*Karst*); *Benson v. Northwest Airlines, Inc.*, 561 N.W.2d 530, 541 (Minn. Ct. App. 1997) ("In this case, however, the same disability -- the aggravation of Benson's shoulder condition -- formed the basis for both his discrimination claim and workers' compensation claims. Therefore, *Karst* is controlling and precludes Benson from bringing a MHRA disability discrimination claim[.]").

Neumann argues that *Karst* and its progeny do not foreclose her claim, because her case is analogous to *Hunter v. Nash Finch Co.*, 498 N.W.2d 759 (Minn. Ct. App. 1993). In *Hunter*, the plaintiff lost two fingers of his left hand while working for another employer eight years prior to starting work at Nash Finch. While working at Nash Finch, Hunter acquired carpal tunnel syndrome in his right hand, underwent carpal tunnel relief surgery, and received workers' compensation benefits. The Minnesota Court of Appeals held that Hunter had a viable claim for disability discrimination because his claim was based on discrimination that he encountered as a result of the earlier injury to his left hand, not the injury to his right hand for which he received workers' compensation benefits from Nash Finch. *Id.* at 762. Thus, the disability discrimination claim did not relate to any injury for which Hunter was receiving workers' compensation benefits based on an injury suffered while employed by the defendant company. *Id.*

Here, it is undisputed that Neumann was awarded workers' compensation benefits for the injury she suffered at AT&T. She bases her MHRA claim on discrimination that allegedly arose out of and after the injury for which she received workers' compensation benefits. Accordingly, *Hunter* is inapposite, and the district court correctly concluded that *Karst* bars Neumann's claim under the MHRA.

* * *

For the foregoing reasons, the district court did not err by refusing to remand Neumann's original complaint to state court, or by granting summary judgment in

favor of AT&T and Gates McDonald on Neumann's claims based on ERISA, estoppel, and the MHRA. Although these claims failed, Neumann did receive sickness and workers' compensation benefits for a year, and she had an opportunity to press in Minnesota state court her claim under Minn. Stat. § 176.82, subd. 2 alleging a refusal to offer continued employment. The judgment of the district court is affirmed.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

September 28, 2004

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

RECEIVED BY U.S. MAIL
2004 SEP 30 AM 9:11
CLERK, U.S. DIS COURT
MINNEAPOLIS MN

Re: 03-2569/2570 Kelly Renee Neumann vs. AT&T Communications

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

dms
Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable Paul A. Magnuson
Michael M. Bader
R. Scott Davies
Jason M. Hedican
Rolf Gilbertson
Chad A. Snyder

District Court/Agency Case Number(s): CIV 01-1551 PAM/JGL
District Court/Agency Case Number(s): CIV 01-2339 PAM/RLE